Cassius L. PEACOCK, Jr.

v.

RETAIL CREDIT COMPANY.

Civ. A. No. 11597.

United States District Court
N. D. Georgia,
Atlanta Division.

June 12, 1969.

Shoob, McLain & Jessee, C. James Jessee, Jr., Atlanta, Ga., for plaintiff.

Hansell, Post, Brandon & Dorsey, Bryan, Carter, Ansley & Smith, Atlanta, Ga., for United States Fidelity & Guaranty Co.

## ORDER

EDENFIELD, District Judge.

This suit for libel, and for invasion of the right of privacy, is presently under a stay order, being continued by this court until the issuance of a further order upon pending discovery matters. The court's stay order stated that it would consider defendant's motion for summary judgment after the discovery ruling. However, the court's view of the law controlling the case enables the court to pass on all motions simultaneously, and it hereby grants defendant's motion for summary judgment and denies any further discovery to plaintiff.

Plaintiff, Cassius L. Peacock, Jr., sued the defendant, Retail Credit Company, a large national mercantile credit information agency, for libel, and for invasion of the right to privacy, alleging that defendant had accused plaintiff of making false financial reports in his capacity as an officer of Peacock Construction Company, and of adultery with prostitutes and three successive bookkeepers in his

employ. The alleged publications appeared in credit and insurance reports furnished, in the normal course of defendant's business, to insurance companies, banks and other businesses requesting such information. These allegations would amount to libel per se, under Ga. Code Ann. § 105–701 (1968). Plaintiff argued that each review or exhibition to a third party, of a report once furnished a customer and placed in its file, was a republication of the original libel. Defendant denied all of plaintiff's contentions and further contended that, even if it had published a libel against plaintiff, more than one year had intervened between the date of publication and the date of suit and that the action was therefore barred by the Georgia statute of limitations, Ga.Code Ann. § 3–1004 (Supp.1968). Defendant's view of the Georgia law of libel was that each republication by others of an original libel created a separate cause of action against such subsequent publisher but did not renew the original publication. Therefore, it contended, republication by its customers, if any, did not renew the original publisher's libel. Plaintiff further contended that defendant's collection and publishing of the alleged libelous statements were violations of his constitutional right to privacy, to which defendant countered that plaintiff's failure to show a physical intrusion, similar to a trespass, or a public disclosure of the libel, was fatal to plaintiff's claim.

Plaintiff requested discovery, by means of a motion to produce, under Fed.R.Civ.P. 34, of all reports or documents concerning him, which had ever been in the files of Retail Credit Company. Defendant objected to production of such documents for any period beyond the one-year period of limitations, alleging that such documents published before that period would be irrelevant to the plaintiff's libel suit because barred by the statute of limitations. To counter this allegation, plaintiff alleged that defendant's concealment of libelous statements amounted to such fraud as would toll the statute of limitations, un-

der Ga.Code Ann. § 3–807 (1962). The court ordered defendant to produce all such documents furnished customers during the one-year statute of limitations period. Those documents revealed no libel. The court also ordered defendant to furnish for its *in camera* inspection all other documents outside the one-year period. These documents are now in the custody of the court.

Defendant filed its motion for summary judgment. Plaintiff filed a motion, under Fed.R.Civ.P. 56(f), to continue the hearing of defendant's motion for summary judgment, "until such time as plaintiff may have taken depositions or obtained affidavits" essential to the establishment of his case. Plaintiff readily admitted that he had not established a case for libel, but stated, in an affidavit of his attorney, that "plaintiff expects to establish through discovery the continued use and reuse of said libelous statements by the customers of Retail Credit Company, which continued use constituted a republication of the libelous statements for which Retail Credit is responsible."

The plaintiff then attempted to discover relevant information by notices to take depositions, under Fed.R.Civ.P. 30(a), and subpoenas duces tecum, under Fed.R.Civ.P. 45(d), addressed to representatives of various corporations, alleged to be customers of the defendant. Motions to quash the subpoenas duces tecum were filed. The court then stayed the action, pending this order.

At the outset the court could not discern from the pleadings or the affidavits whether plaintiff was asserting a separate claim for invasion of privacy or whether his allegations in this regard were merely intended to show the aggravating character of the alleged libel. The court therefore entered an order stating:

"The court is somewhat at a loss * * * as to plaintiff's exact contentions with respect to how and when he contends his right to privacy was invaded.

" * * * [T]he plaintiff is instructed * * * to elaborate by affidavit or otherwise, as to how and when he contends his right to privacy was invaded, and on what legal theory. * * *" (See Cabaniss v. Hipsley, 114 Ga.App. 367, 151 S.E.2d 496.) In response, the plaintiff filed a second amendment to his complaint, a brief, and affidavits by him and by his attorney in which he asserted, in essence, that the publication of the credit report itself constituted the invasion of his privacy. Defendant, on the other hand, asserts that more was required, to-wit, either (1) a physical intrusion of plaintiff's solitude, or (2) a public, rather than a restricted, disclosure of embarrassing private facts about plaintiff. In this posture, the case presently awaits decision.

■ The libel issue in this case ultimately turns on the Georgia law of libel, that every publication of libelous matter is a separate cause of action, regardless of the time, place or publisher of the original publication.

"After a libel is published, and subsequently the same libel is again published by an independent party, without participation by the first publisher, the republication is independent and separate from the first publication. It is an independent tort." Howe v. Bradstreet Co., 135 Ga. 564, 565, 69 S.E. 1082 (1911).

See also Central of Georgia Ry. Co. v. Sheftall, 118 Ga. 865, 867, 45 S.E. 687 (1903); Atlanta Journal Co. v. Doyal, 82 Ga.App. 321, 327, 60 S.E.2d 802 (1950); Western Union Tel. Co. v. Vickers, 71 Ga.App. 204, 209, 30 S.E.2d 440 (1944); Crowe v. Constitution Publishing Co., 63 Ga.App. 497, 507, 11 S.E.2d 513 (1940).

■ In order to establish a contrary rule, plaintiff has cited a dictum in Howe v. Bradstreet Co., supra, 135 Ga. at 565–566, 69 S.E. 1082, to the effect that facts attending a second publication of a libel may be such as to hold the original publisher liable in an independent action for damages accruing from the publication, provided the second publication was the natural consequence of the original publication. In other words, if republication by its customers were the natural consequence of the original publication by Retail Credit, then it would be liable, in an independent cause of action, for damages accruing from the republication. But this is not the law, at least in Georgia. The court has been unable to find a single Georgia case in which this dictum has been followed. Moreover, the *Howe* case itself involved facts very similar to the case plaintiff attempts to make here, and the court there held that defendant, the Bradstreet Company, was *not* liable for the republication by its customer.[1] While cases cited by plaintiff, such as Riley v. Dun & Bradstreet, Inc., 172 F. 2d 303 (6th Cir.1949), and Weaver v. Beneficial Financial Co., 199 Va. 196, 98 S.E.2d 687 (1967), would, in the absence of controlling Georgia law, be persuasive to this court, such is not the case here. Therefore, the court holds that Retail Credit is not liable for republication to third parties[2] by its customers of any libelous matter which it originally published.

---

1. Assuming, arguendo, the plaintiff's view of the *Howe* case, republication by a Retail Credit customer could hardly be considered a natural consequence of the original publication. The standard customer's contract, Exhibit "C" to Retail Credit's motion for summary judgment, states: "All reports, whether oral or written, will be kept strictly confidential: no information from reports nor [Retail Credit's] identity as the reporting agency will be revealed to the person reported on or to any other person except a person whose duty requires him to pass on the transaction in relation to which the report was ordered. *No information will be requested for the use of any other person except with [Retail Credit's] written permission.*" (Emphasis added.)

2. Of course, communication of information to a secretary, or to others within the corporate framework, is not a publication. Central of Georgia Ry. Co. v. Jones, 18 Ga.App. 414, 89 S.E. 429 (1916); King v. Schaeffer, 115 Ga.App. 344, 346–347, 154 S.E.2d 819 (1967).

■ ■ The question remains, however, whether there was concealment of the publication of libelous matter, tantamount to fraud, under Ga.Code Ann. § 3-807 (1962). Of course, "mere ignorance of the existence of the facts constituting a cause of action does not prevent the running of the statute of limitations." Davis v. Boyett, 120 Ga. 649, 651, 48 S.E. 185, 186, 66 L.R.A. 258 (1904). There is also no evidence in the case of "deceit or false representation, or other conduct involving moral turpitude." Carnes v. Bank of Jonesboro, 58 Ga.App. 193, 196, 198 S.E. 338, 340 (1938). In short, there is no actionable fraud. See Clinton v. State Farm Mutual Auto Ins. Co., 110 Ga.App. 417, 421-424, 138 S.E.2d 687 (1964); Saffold v. Scarborough, 91 Ga.App. 628, 86 S.E.2d 649 (1955). Therefore, the court holds that the allegations of fraud are insufficient to toll the statute of limitations.

■ With regard to plaintiff's allegation that his right to privacy has been violated, the court notes that Georgia has long recognized such a cause of action. Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68, 69 L. R.A. 101 (1905).

With this realization, the court turns to the case of Cabaniss v. Hipsley, 114 Ga.App. 367, 151 S.E.2d 496 (1966), in which Judge Eberhardt has analyzed the Georgia cases in this area and has categorized them into the following four parts: (1) intrusion upon the plaintiff's seclusion or solitude or into his private affairs, (2) public disclosure of embarrassing private facts about the plaintiff, (3) publicity which places the plaintiff in a false light in the public eye, (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness.

In plaintiff's response to the court's request for him to "elaborate * * * as to how and when he contends his right to privacy was invaded, and on what legal theory", plaintiff responded:

"The false and libelous reports published and distributed * * * have invaded plaintiff's right to privacy by placing him in a false light in the public eye. * * *

\* \* \* \* \* \*

" * * * [T]he inclusion of such derogatory information as a 'credit report' constitutes invasion of plaintiff's right to privacy as (1) an unwarranted intrusion into plaintiff's private affairs; and (2) unwarranted public disclosure of embarrassing private facts about the plaintiff."

The court realizes that the case is before the court on motion for summary judgment, not a motion to dismiss, and that, therefore, the sufficiency of these pleadings as such would not ordinarily come into question. The court concludes, however, that, irrespective of this, the amendment and the affidavits filed by the plaintiff in response to the court's order, when tested against the requirements of *Cabaniss*, supra, now show, affirmatively, that the plaintiff cannot recover on the theory of an invasion of privacy and that the motion, whether considered as one to dismiss or for summary judgment, must be granted. In demonstrating the correctness of this conclusion the court will now examine each actionable category as recognized by *Cabaniss*, just as did Judge Eberhardt.

■ First, plaintiff's reliance on theory (1) as recognized by *Cabaniss*, that of intrusion into his private affairs, is misplaced, because the Georgia cases require that the intrusion must be physical, analogous to a trespass. For example, in Ford Motor Co. v. Williams, 108 Ga.App. 21, 132 S.E.2d 206, rev'd. on other grounds, 219 Ga. 505, 134 S.E. 2d 32 (1963), defendant broke into plaintiff's house and removed goods which he wrongfully suspected plaintiff of having stolen. In Marcelli v. Teasley, 72 Ga.App. 421, 33 S.E.2d 836 (1945), the owner of property came upon premises occupied by the plaintiff and threatened eviction in a loud, profane manner, in the presence of others. Walker v. Whittle, 83 Ga.App. 445, 64 S.E.2d 87 (1951), involved a mistaken identity in

the making of an arrest in the home without a warrant. In McDaniel v. Atlanta Coca-Cola Bottling Co., 60 Ga.App. 92, 2 S.E.2d 810 (1939), electronic eavesdropping equipment was placed in plaintiff's hospital room to obtain information to destroy the validity of her claim of injury, due to an allegedly defective bottle. Finally, several cases involved an unauthorized entry into plaintiff's quarters: Young v. Western & Atlantic R. R., 39 Ga.App. 761, 148 S. E. 414 (1929) (home); Byfield v. Candler, 33 Ga.App. 275, 125 S.E. 905 (1924) (ship's stateroom); Newcomb Hotel Co. v. Corbett, 27 Ga.App. 365, 108 S.E. 309 (1921) (hotel room). See also B–W Acceptance Corp. v. Callaway, 224 Ga. 367, 162 S.E.2d 430 (1968) (repeated attempts, including visits, by defendant collection agency to collect a husband's debt from his estranged wife established a cause of action). Plaintiff has neither alleged nor shown to the court in any way that he has suffered such a physical intrusion upon his privacy. Moreover, in response to the court's query, he replied that the "inclusion of derogatory information as a 'credit report'" constituted the violation. Manifestly, this response not only fails to establish such a physical invasion, analogous to a trespass, as would be required under category (1), but in fact shows the contrary.

Plaintiff's attempt to recover under category (2), on the theory that the credit report amounted to a public disclosure of embarrassing private facts about him, must likewise fail, for the simple reason that there has been no "public" disclosure of any information concerning plaintiff. Only clients of Retail Credit have been supplied with this information, and while this limited publication may have resulted in the denial of an insurance policy, or a denial of credit, the court holds that this is not the type of public disclosure required to establish an invasion of privacy under category (2).[3]

■ The cases support this conclusion. Waters v. Fleetwood, 212 Ga. 161, 91 S.E.2d 344 (1956), and Bazemore v. Savannah Hosp., 171 Ga. 257, 155 S.E. 194 (1930), both involved the unauthorized publication for profit of a photograph of a deceased person. In the earlier case (*Bazemore*), the court held that newspaper publication of an abnormally developed deceased child was actionable as a violation of the right to privacy. But in *Fleetwood*, the court rejected similar allegations concerning a brutally murdered child, noting cryptically that *Bazemore* "was not a unanimous decision." 212 Ga. at 168, 91 S.E.2d 344. A number of cases have held the right to privacy inapplicable. See, for example, Gouldman-Taber Pontiac, Inc. v. Zerbst, 213 Ga. 682, 100 S.E.2d 881 (1957), and Haggard v. Shaw, 100 Ga. App. 813, 112 S.E.2d 286 (1959), in which plaintiff's creditor had written to plaintiff's employer seeking assistance in the collection of an unpaid account. See also Davis v. General Finance & Thrift Corp., 80 Ga.App. 708, 57 S.E.2d 225 (1950), where defendant sent plaintiff a telegram dunning him for an unpaid account. None of these cases support the theory that the mere submission of a confidential credit report, even when it contains false and libelous information, by a credit information company to its customers, is a "public disclosure of embarrassing private facts."

■ Finally, the question remains whether a false and libelous credit re-

3. The court draws support for its conclusion from the "strictly confidential" nature of the Retail Credit standard customer's contract, described in note 1, *supra*.

Further, Black's Law Dictionary 1393 (4th ed. 1968), defines "public", in pertinent part: "Pertaining to a state, nation, or whole community; proceeding from, relating to, or affecting the whole body of people or an entire community. Open to all; notorious. Common to all or many; general; open to common use. [Omitting citations.] Belonging to the people at large; relating to or affecting the whole people of a state, nation, or community; not limited or restricted to any particular class of the community. [Omitting citations.]"

port can be held to invade plaintiff's right to privacy by placing him in a "false light in the public eye." The court holds that, unless it is disseminated to the public, it cannot.

It is conceded that, under category (3), unlike the two categories considered above, the mere submission of the false and libelous information would be actionable, provided it were then disseminated to the public. But, for the reasons stated above, the "public" was not involved here.[4] In his original complaint, plaintiff asserted that publication was being made to "customers of Retail Credit Company." In his first amendment, he alleged that these customers republished the reports to "persons doing business" with them, but that the reports were still not available to him. If the reports were not available to plaintiff, the court is at a loss to understand how they could be conceived to be available to the public.

Again the cases support this conclusion. In Goodyear Tire & Rubber Co. v. Vandergriff, 52 Ga.App. 662, 184 S.E. 452 (1936), the plaintiff trucker stated a cause of action against defendant by alleging that defendant's agent had impersonated plaintiff in obtaining confidential sales information, and then told its competitors that plaintiff had furnished it with the information. Pinkerton Nat'l. Detective Agency v. Stevens, 108 Ga.App. 159, 132 S.E.2d 119 (1963), involved the overt and prolonged trailing of plaintiff by a detective agency in such a manner as to excite distrust and suspicion of neighbors. In Meeks v. Douglas, 108 Ga.App. 424, 133 S.E.2d 768 (1963), allegations of a sheriff's search warrant, taken out in bad faith, injuring plaintiff's reputation, were actionable. See also Ford Motor Co. v. Williams, supra. But, in Brown v. Colonial Stores, Inc., 110 Ga.App. 154, 138

S.E.2d 62 (1964), the plaintiff failed to state a cause of action where she alleged questioning, at the check-out counter of defendant, about a bad check written by her son. In each of these cases, the actionable events occurred in the public arena. On the other hand, the credit report here alleged to be actionable, has not been exposed to the public.

For the above reasons, the court concludes that the right of privacy is not involved in this case, and holds that the plaintiff has failed to state a claim on this theory.

■ It is readily evident from the discovery which has been allowed in the case, that Retail Credit has published no libel concerning the plaintiff within the one-year period of limitation. Further, no fraud has been shown sufficient to toll the statute of limitations. And, under the controlling Georgia law, Retail Credit cannot be held liable for a second publication by one of its customers of any libel which it originally published. As to the alleged violation of the right of privacy, the plaintiff has failed to establish any theory on which he could recover and his pleadings and affidavits in fact show the contrary. Therefore, the defendant's motion for summary judgment is hereby granted, with costs to the plaintiff.

The conclusions which the court has reached dictate that any further discovery, either beyond the period of the statute of limitations, or from third parties, would be irrelevant, immaterial and to no avail under the issues before the court. Therefore, the court denies plaintiff any opportunity for further discovery, and the various motions to quash subpoenas duces tecum filed by defendant Retail Credit, and other witnesses and the corporations by which they are employed are sustained.[5]

4. See note 3, supra.

5. In making this decision the court expresses no opinion whether plaintiff may or may not have some right of action against customers of defendant who may have republished the alleged libel within the statute of limitations. Nor does the court express any opinion as to whether plaintiff might maintain a separate action to discover who these customers are, and hence who to sue. See, e. g., Kurtz v. Brown, 152 F. 372 (3d Cir. 1906) ; Brown

To summarize: Defendant's motion for summary judgment is granted; plaintiff's motions for further discovery are denied; and the motions to quash subpoenas duces tecum, filed by defendant and others, are sustained.

v. McDonald, 133 F. 897 (3d Cir. 1905); Pressed Steel Car Co. v. Union Pacific Ry., 240 F. 135 (S.D.N.Y.1917) (Learned Hand, J.) ; Lucas v. Neidlinger, 210 Ga. 557, 81 S.E.2d 825 (1954); Coca-Cola Co. v. City of Atlanta, 152 Ga. 558, 565, 110 S.E. 730, 23 A.L.R. 1339 (1922). These matters are simply not before the court.

Incidentally, although this case is controlled by Georgia law, a number of recent federal cases provide support for the manner of summary disposition utilized by the court in this case. For example, in Time, Inc. v. McLaney, 5th Cir., 406 F. 2d 565 (dated January 3, 1969), the Fifth Circuit Court of Appeals held, in a libel suit against Life Magazine, that the trial court erred in *denying* summary judgment to the defendant. In Dun & Bradstreet, Inc. v. Miller, 398 F.2d 218 (5th Cir. 1968), in a libel action against a credit reporting company, such as this case, the Fifth Circuit reversed the district court, asserting that defendant's motions for a directed verdict and for judgment notwithstanding the verdict should have been granted. In Copley v. Northwestern Mutual Life Ins. Co., 295 F.Supp. 93 (S.D. W.Va.1968), the court granted defendant Retail Credit Company's motion to dismiss for failure to state a claim for invasion of the right of privacy. (However, the *Copley* court did give the plaintiffs leave to amend to establish such a claim.) Finally, in Hardboard Machinery Co. v. Coastal Products Corp., 398 F.2d 833 (5th Cir. 1968), the court affirmed the district court's granting of motions to dismiss in four libel suits.