A97A2549. ZARACH et al. v. ATLANTA CLAIMS ASSOCIATION
et al.
A97A2550. CLAXTON v. ZARACH et al.
(500 SE2d 1)

SMITH, Judge.

Dr. Robert Zarach and Chamblee Chiropractic Center filed suit against Atlanta Claims Association, William P. Claxton, and the law firm of Goodman, McGuffey, Aust & Lindsey seeking damages for: libel; slander; intentional infliction of emotional distress; disparagement of services, and unfair trade practices; injury to peace, happiness, and feelings; and false light invasion of privacy. The complaint also sought punitive damages and attorney fees under OCGA § 13-6-11.

The three defendants filed motions for summary judgment in the trial court. Atlanta Claims Association's motion sought partial summary judgment on plaintiffs' claims for: intentional infliction of emotional distress; injury to peace, happiness, and feelings; false light invasion of privacy; punitive damages; and attorney fees.[1] The trial court granted Atlanta Claims Association's motion and ruled sua sponte in the association's favor on the remaining claim of libel.

The trial court also granted Goodman, McGuffey, Aust & Lindsey's motion for summary judgment on all claims. The court denied Claxton's motion for summary judgment on the claims of libel, false

---

[1] Prior to the filing of the motion for summary judgment, Zarach and Chamblee Chiropractic Center voluntarily dismissed without prejudice their claims against all three defendants for slander and disparagement of services and unfair trade practices.

light invasion of privacy, punitive damages, and attorney fees, but granted summary judgment on the claims for intentional infliction of emotional distress, and injury to peace, happiness, and feelings.

In Case No. A97A2549, Zarach and Chamblee Chiropractic Center appeal from the trial court's grant of summary judgment to Atlanta Claims Association and Goodman, McGuffey, Aust & Lindsey.[2] In Case No. A97A2550, Claxton cross-appeals from the trial court's denial of his motion on the claims for libel, false light invasion of privacy, punitive damages, and attorney fees.

Under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991), defendants were entitled to summary judgment if they showed, by the record, an absence of evidence to support an essential element of the plaintiffs' case. In determining whether the trial court's rulings were correct in this case, we review the record de novo, construing the evidence and all inferences from the evidence strongly in favor of the nonmoving party. *Denise v. Cannon*, 219 Ga. App. 765, 766 (466 SE2d 885) (1995).

Claxton is an attorney and partner in the law firm of Goodman, McGuffey, Aust & Lindsey. The majority of his practice involves representing insurance companies and handling their questionable or fraudulent insurance claims. Sometime in mid-1994, Claxton was approached by a member of the Atlanta Claims Association, a local nonprofit organization, and asked to participate in an upcoming seminar on insurance fraud. Claxton, who is a member of the association, agreed to speak at the seminar and to prepare a topic entitled "Fraud Indicators" for the seminar materials. The papers he provided for the topic consisted of a table of contents with fourteen sections, one of which was entitled "Review of Vietnamese Claims."

Claxton included a separate section on Vietnamese claims in his seminar material because, in his opinion, the Vietnamese community seemed to be targeted by certain professionals for their insurance claim business more than any other cultural group. In this section of his seminar material, Claxton included a packet of information he obtained from an insurance company that had asked him to investigate a personal injury claim made by one of its Vietnamese insureds. The insurance claims supervisor included plaintiffs' advertisement from a local Vietnamese newspaper in this packet because Zarach had treated the insured for injuries he allegedly received in an automobile accident.[3] Claxton included plaintiffs' advertisement in his

---

[2] Plaintiffs have not appealed the trial court's dismissal of their claims against Claxton for intentional infliction of emotional distress and injury to peace, happiness, and feelings.

[3] The advertisement is primarily in Vietnamese, and no translation has been provided by either party. The names of Chamblee Chiropractic Center, Zarach, and Featherstone are written in English along with the office's address, telephone, and hours of operation. Also in

seminar material to illustrate his point that chiropractors and other professionals were soliciting the Vietnamese community for its insurance claims business.

Upon completing the seminar material, Claxton submitted the original to the Atlanta Claims Association without making a copy for himself. Claxton contends that because of an oversight, he inadvertently included a copy of plaintiffs' advertisement without redacting the names. He further contends that a copy of the advertisement with plaintiffs' names redacted was prepared, but he mistakenly failed to include this redacted version with the original papers.[4]

Claxton's article, along with articles submitted by other speakers at the seminar, was copied and bound for handout at the seminar by an Atlanta Claims Association representative. Neither this representative nor anyone else at Atlanta Claims Association supervised, oversaw, proofed, redacted, or approved any of the seminar material submitted by the five speakers at the insurance fraud seminar. Atlanta Claims Association followed this procedure for all previous seminars and never had any previous problems with its policy of not reviewing seminar materials submitted by speakers.

Atlanta Claims Association made 150 copies of the seminar booklet and made them available to seminar attendees. During the seminar, Claxton never reached the section of his materials on Vietnamese claims because he ran out of time. The advertisement, however, was noticed by a fraud investigator attending the seminar who brought it to the attention of Zarach's current attorney.

## Case No. A97A2550

1. Claxton first alleges the trial court erred in failing to grant his motion for summary judgment on plaintiffs' libel claim on the ground that he was immune from civil liability pursuant to the provisions of OCGA § 51-1-20. The immunity granted by this Code section is limited to: "[a] person serving with or without compensation as a member, director, or trustee, or as an officer of the board without compensation, of any nonprofit . . . association or of any nonprofit, charitable . . . institution or organization . . . acting in good faith within the scope of his or her official actions and duties." OCGA § 51-1-20 (a). Although it is undisputed that Claxton was a member of Atlanta Claims Association at the time of the seminar, no evidence was presented to support his contention that his participation in the seminar was within the scope of any official actions and duties owed to the association. Absent such a showing, Claxton is not entitled to

English are the words "Auto Accident" and "Workers' Compensation."

[4] The record shows that some names in Claxton's seminar material were redacted.

the immunity provided for in this statute.[5] Compare *Bunkley v. Hendrix*, 164 Ga. App. 401 (296 SE2d 223) (1982) (member of board of governors of nonprofit organization entitled to civil immunity under former Code Ann. § 105-114 for official actions authorizing activity at which plaintiff injured). The trial court did not err in failing to grant Claxton's motion for summary judgment on these grounds.

2. Claxton next contends the trial court erred in denying his motion for summary judgment on plaintiffs' libel claim because the evidence of record fails to support a claim for either libel per se or libel per quod. We agree.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1. A written defamatory statement is actionable as either libel per se or libel per quod. *Macon Telegraph Pub. Co. v. Elliott*, 165 Ga. App. 719, 723 (5) (302 SE2d 692) (1983).

"Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality." (Citations and punctuation omitted.) *Barber v. Perdue*, 194 Ga. App. 287, 288 (390 SE2d 234) (1989). Statements that tend to injure one in his trade or business also are libelous per se. See *Southern Co. v. Hamburg*, 220 Ga. App. 834, 840 (3) (470 SE2d 467) (1996). When determining whether words are defamatory as a matter of law, courts may not hunt for strained constructions, see *Willis v. United Family Life Ins.*, 226 Ga. App. 661, 662 (487 SE2d 376) (1997), and must rely upon the words themselves in considering whether a statement was defamatory per se. See *Mathews v. Atlanta Newspapers*, 116 Ga. App. 337, 339 (157 SE2d 300) (1967); *Barber*, supra. "Defamatory words which are actionable per se are those which are recognized as injurious on their face — without the aid of extrinsic proof. However, if the defamatory character of the words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo. [Cit.]" *Macon*, supra at 723. The law is abundantly clear in Georgia — words that are libelous per se do not need innuendo. *World Ins. Co. v. Peavy*, 110 Ga. App. 651, 654 (139 SE2d 440) (1964).

In this case, plaintiffs have not demonstrated that the inclusion of plaintiffs' advertisement in the seminar material was defamatory as a matter of law. A copy of plaintiffs' advertisement appears in the appendix to Claxton's seminar material in the section entitled "Review of Vietnamese Claims." Although no words accompany the

---

[5] In its pleadings, Atlanta Claims Association expressly denies Claxton's participation in the seminar was within the scope of any official acts or duties owed to the association.

advertisement explaining the purpose behind its inclusion in the seminar material (i.e., to illustrate how professionals, including chiropractors, solicited the Vietnamese community for their insurance claims business), neither are words included charging plaintiffs with participating in insurance fraud or operating their chiropractic business in a criminal, dishonest, or immoral manner. Absent any such language, we cannot see how the inclusion of plaintiffs' advertisement in the seminar material, on its face, impugned plaintiffs' character or business as a matter of law.

We reject plaintiffs' argument that through the use of innuendo and extrinsic evidence (i.e., the placement of the advertisement in the "Fraud Indicators" portion of the seminar material), an inference of defamation was created. As discussed previously, rumor, innuendo, and extraneous circumstances cannot be relied upon in considering whether a writing is defamatory as a matter of law. *Willis*, supra at 663; *World Ins. Co.*, supra at 654. The defamatory character of written material must appear on its face, and a seminar participant's subjective decision to impute innuendo to the inclusion of the advertisement in the material is simply not actionable as defamation per se. See *Cox Enterprises v. Bakin*, 206 Ga. App. 813, 818 (1) (426 SE2d 651) (1992). See also *Chance v. Munford, Inc.*, 178 Ga. App. 252 (342 SE2d 746) (1986) (posting notice stating plaintiff was not allowed in store was not defamatory regardless of readers' speculation on possible reason for exclusion).

We also find that the inclusion of plaintiffs' advertisement in the seminar materials is not actionable as libel per quod. An essential element of an action for libel per quod is that the plaintiff be able to show special damages. *Jamison v. First Ga. Bank*, 193 Ga. App. 219, 222 (3) (387 SE2d 375) (1989). These special damages "must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." (Citation and punctuation omitted.) Id. Because the record establishes that plaintiffs have not sustained any financial or economic damage as a result of the inclusion of this advertisement in the seminar material, plaintiffs have no claim for libel per quod. Accordingly, the trial court erred in denying Claxton's motion for summary judgment on plaintiffs' libel claim. See generally *Webster v. Wilkins*, 217 Ga. App. 194, 196-197 (456 SE2d 699) (1995).

3. In his next enumeration of error, Claxton argues the trial court erred in denying his motion for summary judgment on plaintiffs' claim for false light invasion of privacy.

"To constitute the tort of invasion of privacy by publicity which places one in a false light in the public eye, there must be established as one of the elements of the tort, that the publicity was false; to wit, it depicts the plaintiff as something or someone which he is not."

(Citations and punctuation omitted.) *Merz v. Professional Health Control &c.*, 175 Ga. App. 110, 111 (332 SE2d 333) (1985). See also *Cabaniss v. Hipsley*, 114 Ga. App. 367, 376-377 (3) (151 SE2d 496) (1966).

This element of falsity is absent in this case because plaintiffs have admitted they were advertising in Vietnamese newspapers and actively soliciting Vietnamese patients for their insurance claims business. The depiction of plaintiffs as chiropractors soliciting Vietnamese patients therefore was not a false depiction. As discussed in Division 2, above, certain people at the seminar *might* speculate from the inclusion of plaintiffs' advertisement in the "Fraud Indicators" section of the material that plaintiffs were participating in insurance fraud. But "[w]hatever innuendos people may draw" from such inclusion "is a matter of individual thought processes, not enhanced, abetted, distorted or misrepresented" by the inclusion of the advertisement in the seminar material. *Brown v. Capricorn Records*, 136 Ga. App. 818, 820 (222 SE2d 618) (1975). Plaintiffs were not presented in a false light; they were depicted as being what they were — professionals targeting Vietnamese patients for their insurance claims business. See *Cabaniss*, supra at 376-377.

Because Claxton negated one essential element of plaintiffs' false light claim, the trial court erred in denying his motion for summary judgment.

4. In light of our decisions in Divisions 2 and 3 determining that plaintiffs have no claims against Claxton for libel or invasion of privacy, we also find that the trial court should have granted summary judgment in favor of Claxton on plaintiffs' claims for punitive damages and attorney fees.

### Case No. A97A2549

5. In their appeal, Zarach and Chamblee Chiropractic Center first enumerate as error the trial court's grant of summary judgment to Goodman, McGuffey, Aust & Lindsey. We need not address this issue, however, in light of our decisions in Divisions 2 through 4, above, because plaintiffs' claims against the law firm are predicated upon respondeat superior and are therefore purely derivative in nature. See *Gardner v. Boatright*, 216 Ga. App. 755, 756 (455 SE2d 847) (1995).

6. Plaintiffs also enumerate as error the trial court's grant of summary judgment to Atlanta Claims Association on all of plaintiffs' remaining claims. As discussed above, the inclusion of plaintiffs' newspaper advertisement in the seminar material was not defamatory and did not invade plaintiffs' right of privacy. Accordingly, the trial court's grant of summary judgment to the association on these

grounds was not error.

We also note that the trial court did not err in granting summary judgment sua sponte to Atlanta Claims Association on plaintiffs' libel claim.

"Although our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. The crucial point is to ensure that the party against whom summary judgment is sought has had a *full and final opportunity* to meet and attempt to controvert the assertions against him." (Citations and punctuation omitted.) *Aycock v. Calk*, 222 Ga. App. 763, 764 (476 SE2d 274) (1996).

All three defendants filed motions for summary judgment in the trial court. Although Atlanta Claims Association's motion did not seek summary judgment on the libel claim, the motion of the other defendants did. The issue of whether the alleged defamatory statement was or was not libelous therefore was dealt with extensively in plaintiffs' brief filed in opposition to Claxton's and Goodman, McGuffey, Aust & Lindsey's motion, and the trial court had an opportunity to consider all of plaintiffs' arguments now raised on appeal prior to the entry of summary judgment. Because plaintiffs had full and fair notice and opportunity to litigate this issue in the trial court, there was no error in the trial court's sua sponte grant of summary judgment to Atlanta Claims Association.

*Judgments affirmed in part and reversed in part. McMurray, P. J., and Beasley, J., concur.*

DECIDED MARCH 11, 1998 — .
RECONSIDERATION DENIED MARCH 27, 1998

*Jonathan P. Sexton, Aleksandra H. Bronsted*, for Zarach.
*Gorby & Reeves, Michael J. Gorby, Daniel E. Turner*, for Claxton.
*Swift, Currie, McGhee & Hiers, Susan A. Dewberry*, for Atlanta Claims Association.